IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ANTHONY STEVEN HALL, JR.,<br><br>　　　　Defendant. | No. CR15-0055<br><br>REPORT AND RECOMMENDATION |

TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *RELEVANT FACTS AND PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . 2

*III.*   *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.*    *Did the Court Fully Comply With Fed. R. Crim. P. 11?* . . . . . . . . . 8
    *B.*    *Did the Government Breach the Plea Agreement?* . . . . . . . . . . . . 10
    *C.*    *Did Mr. Nathan Provide Ineffective Assistance of Counsel?* . . . . . . 11

*IV.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *A.*    *A Fair and Just Reason* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *B.*    *Other Factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *1.*    *Defendant's Claim of Innocence* . . . . . . . . . . . . . . . . . . 14
        *2.*    *Delay in Filing Motion to Withdraw* . . . . . . . . . . . . . . . . 17
        *3.*    *Prejudice to the Government* . . . . . . . . . . . . . . . . . . . . 18
    *C.*    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*V.*    *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

On the 4th day of December 2015, this matter came on for hearing on the Motion to Withdraw Guilty Plea (docket number 28) filed by the Defendant on November 20, 2015, and the Resistance (docket number 33) filed by the Government on November 27. The Government was represented by Assistant United States Attorney C.J. Williams. Defendant Anthony Steven Hall, Jr. appeared personally and was represented by his attorney, David Nadler.

## II. RELEVANT FACTS AND PROCEEDINGS

On June 11, 2015, Defendant was charged by a Criminal Complaint with being a felon and unlawful drug user in possession of a firearm.[1] At his initial appearance on June 17, attorney Christopher Nathan was appointed to represent Defendant. Following a preliminary hearing and detention hearing on June 22, the Court found probable cause to believe Defendant had committed the crime described in the criminal Complaint, and ordered his continued detention pending further proceedings.

Prior to the detention hearing, the United States Probation Office filed a pretrial services report. Among other things, the report included Defendant's arrest history. The report shows that Defendant served a prison term in Texas when he was convicted of robbery at age 17. The report also shows Defendant was charged in 2008 in Linn County, Iowa, with four counts of "controlled substance violation." According to the report, in 2009 Defendant received a 10-year suspended prison term on Count 1, with Counts 2, 3, and 4 being dismissed.[2]

---

[1] *See United States v. Anthony Steven Hall, Jr.*, No. 1:15-MJ-00176-JSS (N.D. Iowa).

[2] Pretrial Services Report (docket number 12 in Case No. 1:15-MJ-00176-JSS) at 4.

Mr. Nathan testified at the instant hearing that he had his assistant check Defendant's record using Iowa Courts Online, and was told that Defendant was only convicted on one count in the 2008 Linn County case. That is, based on the pretrial services report and the results of his assistant's review, Mr. Nathan believed Defendant had only one drug conviction in the 2008 Linn County case. However, Defendant was actually convicted in Counts 1 and 3 in the Linn County case, which Mr. Nathan testified is accurately shown on Iowa Courts Online.

On June 24, 2015, Assistant United States Attorney C.J. Williams sent an email to Mr. Nathan, regarding a possible plea agreement. Mr. Williams advised Mr. Nathan that if he included a "924(c) charge" [possession of a firearm in furtherance of a drug trafficking crime] in the initial indictment, then he would not be able to dismiss it later as part of a plea agreement. Mr. Williams indicated, however, that if Defendant "agrees to plead now to a criminal information on being a felon in possession without having to indict, then I don't have to pursue the 924(c)."[3]

Mr. Nathan responded later that afternoon, asking if Mr. Williams would "please let me know if you are presently aware of a third predicate conviction for ACCA purposes (I know he has the COV out of Texas and CSO out of Iowa)."[4] Mr. Williams responded a short time later as follows:

> I am not aware of a third qualifying offense. Of course, in the plea agreement we'll want to make sure he's aware that's a possibility if the probation office finds a conviction we're not aware of, but it doesn't look to me like he qualifies.

---

[3] Email from C.J. Williams to Christopher Nathan, dated June 24, 2015 (Government's Exhibit 2).

[4] Email from Christopher Nathan to C.J. Williams, dated June 24, 2015 (Government's Exhibit 3).

Email from C.J. Williams to Christopher Nathan, dated June 24, 2015 (Government's Exhibit 3).

The parties reached a plea agreement, as reflected in a letter from Mr. Williams to Mr. Nathan, dated June 25, 2015. *See* Defendant's Exhibit B. The "Stipulation of Facts" found in the Plea Agreement purports to state Defendant's prior felony convictions, as follows:

> Defendant was convicted of the following felony offenses:
>
> - Delivery of a Controlled Substance, in the Iowa District Court for Linn County, FECR 76238, on August 8, 2009, and;
> - Robbery, in the Travis County, Austin, Texas, on April 8, 2003.

Letter from C.J. Williams to Christopher Nathan, dated June 25, 2015, at 4, ¶ 6(G) (Defendant's Exhibit B at 4).

The Plea Agreement describes the applicable penalties as follows:

> Defendant understands that Count 1 of the Information is punishable by the following maximum penalties: (1) not more than 10 years' imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of not more than 3 years. Defendant also understands, however, that if the court finds defendant has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, then pursuant to 18 U.S.C. § 924(e)(1), then Count 1 is punishable by a mandatory minimum sentence of 15 years' imprisonment without the possibility of parole and the following maximum penalties: (1) not more than life imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of not more than 5 years.

*Id.* at 1-2, ¶ 2 (Defendant's Exhibit B at 1-2). Defendant accepted the Plea Agreement on June 29, with both counsel signing on June 30.

On June 30, 2015, Defendant Anthony Steven Hall, Jr. was charged by Information with possession of a firearm by an unlawful drug user and felon. After first alleging that Defendant knowingly possessed a firearm on April 13, 2015, the Information then purports to set forth Defendant's felony record:

> Defendant Anthony Hall previously had been convicted of at least one crime punishable by imprisonment for a term exceeding one year, namely: (1) Delivery of a Controlled Substance, on August 8, 2009, in the Iowa District Court for Linn County, FECR076238, and; (2) Robbery, on April 8, 2003, in the 167th District Court for Austin, Texas.

Information (docket number 2). The Information was one count only, and did not charge possession of a firearm in furtherance of a drug trafficking crime, in violation of § 924(c).

Also on June 30, Mr. Williams sent the Court a letter, commonly referred to in this district as a "RULE 11 letter," with a copy provided to Mr. Nathan. Mr. Williams advised the Court that Defendant would plead guilty to being a felon and an unlawful drug user in possessing of a firearm, as alleged in the Information, pursuant to a plea agreement. In reciting the elements of the offense, the letter states that Defendant was prohibited from possessing a firearm because, among other things, he had previously been convicted of one or more offenses punishable by a term of imprisonment exceeding one year. The RULE 11 letter then identifies the same felony offenses described in the Information and the Plea Agreement.

When describing the possible punishments associated with the charge, Mr. Williams referred not only to the maximum prison term (10 years) set forth in § 924(a), but also to the penalties associated with the Armed Career Criminal Act, as set forth in § 924(e). That is, Mr. Williams noted that if Defendant has three or more prior qualifying

convictions, then he is punishable by a mandatory minimum sentence of fifteen years' imprisonment, with the possibility of life imprisonment. When he sent the RULE 11 letter, however, Mr. Williams did not believe Defendant qualified as an armed career criminal:

> Based on what the government knows of defendant's criminal history at the current time, it does not appear that defendant would qualify as an Armed Career Criminal.

Letter from C.J. Williams to Judge Jon S. Scoles, dated June 30, 2015 (Defendant's Exhibit C).

At his arraignment on July 6, 2015, Defendant entered a plea of guilty to the charge. Prior to recommending that Chief Judge Reade accept Defendant's guilty plea, I personally addressed Defendant in open court, as required by FEDERAL RULE OF CRIMINAL PROCEDURE 11(b)(1). After reviewing Defendant's rights and establishing a factual basis for his guilty plea, I addressed the applicable penalties:

> THE COURT: Mr. Hall, at this time I want to talk to you about the penalties that apply in this case. Upon your plea of guilty to this charge, you can be sent to prison for up to 10 years and fined up to $250,000, with a mandatory special assessment of $100, and then following your release from prison, be placed on supervised release for up to 3 years. Those penalties are set forth in Paragraph 2 of your plea agreement, which is Exhibit 1.
>
> Do you understand the maximum penalties which could be imposed in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, Paragraph 2 of the plea agreement also refers to certain penalties which may be applicable under the Armed Career Criminal Act. It looks like it's a reference to the residual clause of the Armed Career Criminal Act, which, as I understand it, the United States Supreme Court has found unconstitutionally vague here in the last week or two.

> Mr. Williams, does the government claim that the enhanced provisions of the Armed Career Criminal Act would apply in this case?
>
> MR. WILLIAMS: No, as we set forth in the Rule 11 letter, Your Honor, we don't believe the defendant has prior qualifying convictions at this point that we know of that would make him an armed career criminal.
>
> THE COURT: And, Mr. Nathan, have you looked at that issue?
>
> MR. NATHAN: Yes, Your Honor.
>
> THE COURT: Do you believe that the Armed Career Criminal Act would apply in this case?
>
> MR. NATHAN: No, Your Honor.

Transcript of Plea Hearing, 17:17-18:23 (Defendant's Exhibit D).

On July 6, 2015, I filed a Report, recommending that Chief Judge Reade accept Defendant's guilty plea. Among other things, I reported that I "advised the defendant of the consequences of his plea, including an extensive discussion of the maximum punishment possible and any applicable mandatory sentencing considerations."[5] Neither party filed an objection to my Report and Recommendation, and Chief Judge Reade filed an order on July 21, 2015, accepting Defendant's guilty plea. Mr. Nathan filed a motion to withdraw on July 20, citing a conflict of interest, and the Court appointed attorney David Nadler to represent Defendant on July 21.[6]

---

[5] Report and Recommendation Concerning Plea of Guilty (docket number 9) at 3.

[6] The record is silent regarding the "conflict of interest" compelling Mr. Nathan's withdrawal, but it is apparently unrelated to the issue now before the Court.

On August 27, 2015, the United States Probation Office filed a draft presentence investigation report. *See* docket number 17. It was then that the parties discovered — apparently for the first time — that Defendant was actually convicted of *two counts* of delivery of a controlled substance in the Linn County, Iowa, action, rather than one count as previously believed. Count 1 involved Defendant's delivery of crack cocaine in Cedar Rapids on February 12, 2008, while Count 3 involved delivery of crack cocaine by Defendant on February 11, 2008, at a different location in Cedar Rapids. The parties apparently agree that *each* of these counts qualify as one predicate offense in determining if Defendant is an armed career criminal. On September 8, Mr. Nadler timely filed objections to the presentence investigation report, claiming Defendant did not have three prior qualifying convictions, and was not an armed career criminal. The final presentence investigation report, filed on October 6, reaffirmed the United States probation officer's opinion that Defendant is an armed career criminal. Defendant filed the instant motion to withdraw his guilty plea on November 20 — just three days prior to the scheduled sentencing.

### III. DISCUSSION

In asking that he be permitted to withdraw his guilty plea, Defendant argues (1) the Court did not fully comply with FEDERAL RULE OF CRIMINAL PROCEDURE 11, (2) the Government breached the Plea Agreement, and (3) Defendant suffered from ineffective assistance of counsel. Defendant also argues that the other factors to be considered — including a claim of actual innocence, the length of time between his guilty plea and the motion to withdraw the guilty plea, and any prejudice to the Government — weigh in favor of permitting a withdrawal of his guilty plea.

#### A. Did the Court Fully Comply With Fed. R. Crim. P. 11?

FEDERAL RULE OF CRIMINAL PROCEDURE 11(b) describes the procedure to be employed by the court when a defendant pleads guilty.

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> . . .
>
> (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;
>
> (I) any mandatory minimum penalty;

FED. R. CRIM. P. 11(b)(1)(H)-(I). I personally addressed Defendant in open court, as required by RULE 11. The RULE also requires, however, that "during this address" I inform Defendant of any maximum or minimum penalties which apply, and determine that Defendant understands those penalties. I failed to do that here.

As set forth in the transcript, I advised Defendant that upon his plea of guilty to the charge, he could be sent to prison for up to ten years and fined up to $250,000, with a mandatory special assessment of $100. I then noted that paragraph 2 of the Plea Agreement made reference to the Armed Career Criminal Act. Because neither of the attorneys believed Defendant would qualify as an armed career criminal, I failed to advise Defendant "personally in open court" that *if* it was determined he is an armed career criminal, then he faces a mandatory minimum 15 years in prison, and could be sent to prison for the balance of his life. I believe this was a violation of RULE 11.

What I should have done — and what I believe RULE 11 requires — is advise Defendant that "while the attorneys do not believe you qualify as an armed career criminal, if it is discovered prior to sentencing that you have three predicate convictions, then you face a mandatory minimum 15 years in prison, with the potential of being sentenced to life in prison." *See United States v. Hairston*, 522 F.3d 336, 340 (4th Cir.

9

2008) ("[W]hile the district court at the time of the RULE 11 proceeding could not have been certain about whether Hairston would qualify as an armed career criminal, RULE 11 nonetheless required the court to anticipate the possibility and explain to Hairston the sentence that would be applicable if he had prior qualifying convictions.").

I routinely advise defendants of the consequences of the ACCA in similar cases, even when neither attorney believes the defendant qualifies as an armed career criminal. For whatever reason — perhaps I was distracted by my comments regarding the recent Supreme Court decision regarding the ACCA — I failed to do so here. I do not believe that my passing reference to paragraph 2 of the Plea Agreement satisfies the requirement of RULE 11 that I "personally address" the defendant in open court and inform him of the minimum and maximum penalties, and determine that he understands the same. Accordingly, a RULE 11 error occurred during the plea proceeding

### B. Did the Government Breach the Plea Agreement?

Next, Defendant argues that the Government breached the Plea Agreement. Defendant notes that the "stipulation of facts" found in the plea agreement refers simply to "Delivery of a Controlled Substance," in reference to the Linn County case. Defendant argues the Government subsequently breached the Plea Agreement when it did not object to the draft presentence investigation report, which identified *two* drug convictions in the Linn County action.

Defendant's argument in this regard is meritless. The "stipulation of facts" found in the Plea Agreement represents Defendant's assertion of the facts. Paragraph 6 of the Plea Agreement makes it clear that "*defendant* stipulates to the following facts." (emphasis added) In contrast, paragraph 9 of the Plea Agreement provides that "[t]he *parties* stipulate and agree" to certain sentencing provisions. (emphasis added) The Plea Agreement in this case specifically provided that "[n]o agreement has been reached

regarding defendant's criminal history."[7] That is, the Government did *not* stipulate that paragraph 6(G) of the Plea Agreement accurately set forth Defendant's felony convictions and, in fact, the Plea Agreement unequivocally states that no agreement had been reached by the parties in that regard. Accordingly, the Government did not breach the Plea Agreement when it failed to object to the recitation of Defendant's criminal record in the draft presentence investigation report.

### C. Did Mr. Nathan Provide Ineffective Assistance of Counsel?

Defendant also argues he should be permitted to withdraw his guilty plea because he received ineffective assistance of counsel in connection with his guilty plea. To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) such failure prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Defendant argues that Mr. Nathan's failure to discover that the Linn County case included two convictions on different dates, rather than a single conviction, fell below an objective standard of reasonableness.

From the very beginning of the case, counsel for both parties believed Defendant did not qualify as an armed career criminal. The pretrial services report prepared by the United States Probation Office prior to the detention hearing stated, erroneously, that Defendant had received a 10-year suspended prison term on Count 1 in the Linn County case, with Counts 2, 3, and 4 being dismissed. Mr. Nathan asked his assistant to check Defendant's record using Iowa Courts Online, and she, erroneously, provided Mr. Nathan with the same information. Mr. Nathan subsequently asked the prosecuting attorney in an email if he was aware of a third predicate conviction for ACCA purposes, and

---

[7] Letter from C.J. Williams to Christopher Nathan, dated June 25, 2015, at 6, ¶ 9(C) (Defendant's Exhibit B at 6).

11

Mr. Williams responded that he was not aware of a third qualifying offense. Neither the Plea Agreement nor the RULE 11 letter prepared by Mr. Williams reflected more than a single conviction in the Linn County case. It was not until the parties received the draft presentence investigation report that they learned Count 3 of the Linn County case was *not* dismissed, and Defendant had two qualifying convictions from that single case.

Defendant argues that Mr. Nathan could have, and should have, obtained the original record from the Linn County Clerk of Court. Mr. Nathan acknowledged that in some cases he examines the original documentation. In fact, prior to the detention hearing in this case, Mr. Nathan apparently discovered an error in the pretrial services report when describing Defendant's prior criminal record. While it is presumably better practice to obtain a copy of the original paperwork underlying a conviction — particularly when a defendant *may* qualify as an armed career criminal — the Court cannot say after a review of the totality of the circumstances that Mr. Nathan's performance fell below an objective standard of reasonable performance. *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting to second-guess counsel's assistance . . .").

## IV. ANALYSIS

### A. A Fair and Just Reason

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Chief Judge Reade accepted Defendant's guilty plea on July 21, 2015. Accordingly, Defendant has the burden of showing a "fair and just reason" why he should be permitted to withdraw his guilty plea. *United States v. Smith*, 422 F.3d 715, 723-24 (8th Cir. 2005) (placing the burden on a defendant to show a fair and just reason to withdraw his guilty plea). "The 'fair and just' standard is a liberal one, but it does not create an automatic right to withdraw a plea." *Id.*

at 723 (citing *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996)). "A guilty plea is a solemn act not to be set aside lightly." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997) (citing *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

In this case, Defendant claims three "fair and just reasons" why he should be permitted to withdraw his guilty plea. First, Defendant asserts the Court failed to comply with FEDERAL RULE OF CRIMINAL PROCEDURE 11. Second, Defendant claims the Government breached the plea agreement. Third, Defendant argues that he suffered from ineffective assistance of counsel.

As set forth in the discussion above, I do not believe the Government breached the plea agreement in this case, nor do I believe Mr. Nathan's representation fell below an objective standard of reasonable performance. I have concluded, however, that my failure to personally address Defendant regarding the penalties associated with the Armed Career Criminal Act, and my failure to determine that he understood those penalties, violated RULE 11. *Hairston*, 522 F.3d at 340 (holding that RULE 11 requires the court to anticipate the possibility the defendant is an armed career criminal, and explain the enhanced sentence to the defendant). Furthermore, I believe a failure to comply with RULE 11 under these circumstances provides a fair and just reason for Defendant to withdraw his guilty plea. *United States v. Johnson*, 715 F.3d 1094, 1100 (8th Cir. 2013) ("A district court's failure to comply with RULE 11 calls into question the knowing and voluntary nature of a plea, and thus its validity.") (quoting *United States v. Frook*, 616 F.3d 773, 775 (8th Cir. 2010)).

At no time prior to receiving the draft presentence investigation report was Defendant advised that he may qualify as an armed career criminal and face a mandatory minimum 15 years in prison. Because Mr. Nathan believed Defendant did not have three prior qualifying convictions, he did not discuss the consequences of the Armed Career Criminal Act with Defendant. At the RULE 11 hearing, neither attorney believed

Defendant qualified as an armed career criminal. Accordingly, I made only a passing reference to the Armed Career Criminal Act. When Defendant tendered his guilty plea before me, he reasonably believed the *worst* that could happen would be a ten-year prison term. It was only after Chief Judge Reade accepted Defendant's guilty plea that he was informed that the *best* outcome is a 15-year prison term. I believe this constitutes a "fair and just reason" to withdraw a guilty plea, as set forth in RULE 11(d)(2)(B).

### B. Other Factors

Defendant's showing that he has a fair and just reason to withdraw his guilty plea is necessary, but not sufficient. "Even if such a fair and just reason exists, before granting the motion a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *Johnson*, 715 F.3d at 1103 (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)). Conversely, "if the defendant fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations." *Id.*

### 1. Defendant's Claim of Innocence

Defendant now claims he is innocent. Defendant was charged by Information with one count of possession of a firearm by an unlawful drug user and felon. To convict Defendant of this offense, the Government must prove three elements:

1. On about April 13, 2015, Defendant knowingly possessed a firearm in this district.
2. Defendant was prohibited from possessing a firearm because:
   a. he had previously been convicted of one or more offenses punishable by a term of imprisonment exceeding one year, or
   b. he was an unlawful user of marijuana while in possession of the firearm.

14

3. The firearm was transported across a state line.

It is undisputed that Defendant was previously convicted of one or more felonies and the firearm crossed a state line. Accordingly, the "fighting issue" is whether Defendant knowingly possessed the firearm on April 13, 2015.

In his signed plea agreement, Defendant stipulates to the facts underlying the charge. Defendant admits that he "knowingly possessed the Taurus .40 caliber handgun referenced above."[8] Similarly, when I asked Defendant at the plea change hearing whether he "knowingly possess[ed] that Taurus pistol in this district on April 13, 2015," Defendant responded "yes, sir."[9] Furthermore, Defendant admitted that the information set forth in the Stipulation of Facts in the plea agreement was true.[10]

To support his current claim of actual innocence, Defendant argues in his brief that he was "driving someone else's vehicle" and the handgun was not in plain view, but instead was in the console. Defendant notes that his girlfriend, K.M., told law enforcement at the scene of the stop that the handgun was hers. Defendant offered K.M.'s grand jury testimony as Defendant's Exhibit G. K.M. testified on June 23, 2015, that Defendant is the father of one of her children, and she was pregnant with another child fathered by Defendant. According to K.M., she and Defendant had "a friendship type lover type thing" for the last seven or eight years.

In response to questioning, K.M. told the grand jury that she owned a .40 cal. Taurus and a .38 cal. Glock. She purchased the Taurus at a gun show, while being accompanied by Defendant and a third person. K.M. denied Defendant handled the gun

---

[8] Letter from C.J. Williams to Christopher Nathan, dated June 25, 2015, at 4, ¶ 6(I) (Defendant's Exhibit B at 4).

[9] Transcript of Plea Hearing, 13:8-10 (Defendant's Exhibit D).

[10] *Id.* at 16:16-18.

at that time. When K.M. purchased the Glock about six months later, she was again accompanied by Defendant and the same third person.

In April 2015, K.M. owned a Ford Expedition and a Grand Prix. Defendant was permitted to drive the Grand Prix "from time-to-time." According to K.M., she drove the Grand Prix to work, but Defendant picked it up so he could get K.M.'s son, and K.M. "forgot to let him know that [the gun] was even in the car." K.M. claimed that if she had remembered the gun was in the car, "I would have took it out and put it in my job." K.M. denied that the multiple bags of marijuana found with the gun belonged to her. K.M. denied she had ever seen Defendant touch the gun.

The Government rejects Defendant's new assertion of innocence. The Government notes Defendant stipulated in the plea agreement that he possessed the firearm and then testified, under oath, at the plea change hearing that he possessed the firearm. *See United States v. Peebles*, 80 F.3d 278, 279 (8th Cir. 1996) ("We agree with the District Court that Peebles's claims of innocence are unavailing, given his admissions to the contrary in the plea agreement and stipulation, and at the change-of-plea hearing."); *United States v. Ludwig*, 972 F.2d 948, 951 (8th Cir. 1992) ("Ludwig presented no evidence to support his claim, and his 'mere assertion of innocence, absent a substantial supporting record, will not be sufficient to overturn a denial of a motion to withdraw.'"); *United States v. Goodson*, 569 F.3d 379, 383 (8th Cir. 2009) ("The court correctly noted that Goodson's 'mere assertion of innocence' did not provide a sufficient evidentiary basis for withdrawing the plea.").

Defendant provides no explanation for his inconsistent positions. Nonetheless, K.M.'s grand jury testimony provides *some* support for Defendant's claim that he did not possess the firearm. I believe it is the function of the jury, not the Court, to assess K.M.'s credibility in this regard. Defendant does not address the Government's claim that his

phone contained a video "showing him displaying the same firearm next to marijuana, a scale, and baggies."[11]

Presumably, any time a defendant asserts his innocence and asks to withdraw his guilty plea, there is an inconsistency with the record made at the plea change hearing. That is, to accept a defendant's guilty plea it is necessary to establish a factual basis for the plea. In virtually every case, this factual basis is established by the defendant's own admissions. Accordingly, if a defendant's admissions at the plea change hearing are dispositive of his motion to withdraw the guilty plea, then it seems that no motion to withdraw would ever be granted. Because Defendant has presented *some* evidence to support his claim that he did not possess the firearm, I believe this factor does not strongly support either party.

### 2. *Delay in Filing Motion to Withdraw*

Another factor to be considered in determining whether Defendant should be permitted to withdraw his guilty plea is the length of time between the guilty plea and the motion to withdraw it. Defendant pled guilty at his arraignment before me on July 6. I filed a Report on the same day, recommending Chief Judge Reade accept Defendant's guilty plea. When neither party filed an objection to my recommendation, Chief Judge Reade accepted Defendant's guilty plea on July 21. Defendant filed the instant motion on November 20, some four months after the acceptance of his guilty plea.

Apparently coincidentally, Mr. Nathan was permitted to withdraw his appearance on July 20 (the day before Chief Judge Reade accepted Defendant's guilty plea), and Mr. Nadler was appointed to represent Defendant on July 21. It was not until August 27, however, that the parties learned for the first time that Defendant had three predicate convictions and qualified as an armed career criminal. In his objections to the draft

---

[11] Government's resistance (docket number 33) at 3.

presentence investigation report filed 12 days later (September 8), Defendant objected that "[t]he information in this case makes no mention of 18 U.S.C. § 924(e)(1)", denied the recitation of Defendant's criminal history, and specifically asserted that "[t]he defendant is not an armed career criminal."[12] A transcript of the plea proceeding was filed on October 2. On October 19, Defendant filed a Sentencing Memorandum, stating that one of the issues was whether Defendant's robbery conviction in Texas qualified as a predicate under § 924(e).[13] It was not until more than one month later — on November 20 — that Defendant filed the instant motion to withdraw his guilty plea. Defendant provides no real explanation for this additional delay.

In its resistance, the Government argues that "[t]his type of delay is reason enough not to grant a motion to withdraw a guilty plea," citing *United States v. Jones*, 479 F.3d 975, 978 (8th Cir. 2007) (a seven-month delay); *United States v. Prior*, 107 F.3d 654, 658 (8th Cir. 1997) (a five-month delay); *United States v. Vallery*, 108 F.3d 155, 158 (8th Cir. 1997) (a four-month delay). Here, the motion to withdraw was filed less than three months after the parties first learned that Defendant qualified as an armed career criminal, and eight weeks after the transcript was filed, verifying the RULE 11 error. While I believe this constitutes a substantial delay, it is not dispositive. That is, this factor does not weigh heavily for either party.

### 3. Prejudice to the Government

Defendant concedes that if he is permitted to withdraw his guilty plea, "some degree of prejudice to the Government is inevitable."[14] Defendant argues, however, that "this is not a complex case," involves the testimony of "a few witnesses," and the prejudice to the

---

[12] *See* Defendant's Objections to PSIR (docket number 19) at 2, ¶ 5.

[13] *See* Defendant's Sentencing Memorandum (docket number 25) at 1.

[14] Defendant's Brief (docket number 28-1) at 9.

Government is minimal. The Government argues, on the other hand, that "[p]rejudice occurs by reason of the passage of time, the inevitable degradation of memory, and the possible loss of evidence."[15]

I believe the prejudice to the Government in permitting Defendant to withdraw his guilty plea would be minimal. This case arises from a traffic stop where marijuana and a gun were found in the console of a car being driven by Defendant. Presumably, the principal witnesses will include the officers involved in the traffic stop and subsequent investigation. Other than a generalized prejudice caused by any delay, the Government has not detailed any prejudice which attaches in this case. That is, the Government does not assert the unavailability of witnesses or any other unique problems caused by the passage of time. I believe this factor weighs in favor of permitting Defendant to withdraw his guilty plea.

## C. Summary

In summary, I believe Defendant has met his burden of showing a "fair and just reason" why he should be permitted to withdraw his guilty plea. By failing to personally advise Defendant of the minimum penalty and maximum penalty which could be imposed if he is an armed career criminal, I failed to comply with FEDERAL RULE OF CRIMINAL PROCEDURE 11. When Defendant tendered his guilty plea, he believed — based on the colloquy which he had with me in open court — that the *worst* that could happen would be a 10-year prison term. It was only after his guilty plea was accepted by Chief Judge Reade that he learned that the *best* that could happen was a 15-year prison term. Fundamental due process requires that Defendant be permitted to withdraw his guilty plea under these circumstances. While the other factors to be considered by the Court weigh both for and against permitting Defendant to withdraw his guilty plea, I believe my failure

---

[15] Government's Resistance (docket number 33) at 20.

to fully advise Defendant of the applicable penalties, and determine that he understood those penalties, must predominate on this issue.

It is not often that a defendant is permitted to withdraw his guilty plea. "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" *Morrison*, 967 F.2d at 268 (quoting *United States v. Rawlins*, 440 F.2d 1043, 1046 (8th Cir. 1971)). For the reasons set forth above, I believe this is one of those exceptional cases where a defendant should be permitted to withdraw his guilty plea.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Withdraw Guilty Plea (docket number 28) filed by Defendant be **GRANTED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on December 4, 2015.*

DATED this 15th day of December, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA