**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ANTHONY STEVEN HALL, JR., <br><br> Defendant. | No. 15-CR-55-LRR <br><br> **ORDER** |

*TABLE OF CONTENTS*

*I.*   *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*  *RELEVANT BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.*   *Underlying Events* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.*   *Criminal Charges* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *C.*   *Guilty Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *D.*   *Post-Plea Events* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

*III.* *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*IV.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *A.*   *Harmless Error* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *B.*   *Fair and Just Reason for Withdrawal* . . . . . . . . . . . . . . . . . . . *12*
        *1.*   *Assertion of innocence* . . . . . . . . . . . . . . . . . . . . . . *13*
        *2.*   *Delay in filing the Motion* . . . . . . . . . . . . . . . . . . . . *14*
        *3.*   *Prejudice to the government* . . . . . . . . . . . . . . . . . . *16*

*V.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

*I. INTRODUCTION*

The matters before the court are the government's "Objections to Report and Recommendation Regarding Defendant's Motion to Withdraw Guilty Plea" ("Government Objections") (docket no. 39) and Defendant Anthony Steven Hall, Jr.'s "Substituted and Amended Objections to Report and Recommendation Re Motion to Withdraw Guilty Plea"

("Defense Objections") (docket no. 44), timely filed[1] in response to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 38), which recommends that the court grant Defendant's "Motion to Withdraw Guilty Plea" ("Motion") (docket no. 28).

## II. RELEVANT BACKGROUND

### A. Underlying Events

On April 13, 2015, Defendant was stopped by police for driving with his high-beam headlights activated. There were two other people in the car at the time and the car was registered to Defendant's girlfriend. During interactions with Defendant and the car's occupants, officers were unable to determine Defendant's identity (based on conflicting information provided by Defendant) and smelled an odor of marijuana coming from the car. Officers proceeded to search the car and seized a firearm and marijuana from the front center console. Defendant was eventually placed under arrest.

During the encounter, Defendant's girlfriend arrived at the scene. Before being questioned by officers about the firearm, she told officers that the firearm inside the car belonged to her. She also stated that Defendant's fingerprints would be found on the firearm (which turned out not to be the case) and denied any knowledge of Defendant's use of marijuana or the presence of marijuana inside the car. One of the occupants that had been in the car with Defendant told officers that she had smoked marijuana with Defendant in the car earlier in the evening.

---

[1] Defendant's original objections to the Report and Recommendation were timely filed within the required fourteen-day period. *See* Defense Objections to Report and Recommendation Re Withdrawal of Guilty Plea (docket no. 40). Although the Defense Objections were filed after the fourteen-day period, they merely amended Defendant's original objections to include citations to a transcript prepared after those objections were filed. *See* Defense Objections at 1 n.1. The court therefore considers the Defense Objections as timely.

After Defendant's arrest, officers executed a search warrant of Defendant's phone. The search revealed various depictions of Defendant smoking marijuana and a video of Defendant in the presence of what appears to be the same firearm as the one found by officers in the car.

### B. Criminal Charges

On June 12, 2015, Defendant was charged by criminal complaint with being a felon and unlawful drug user in possession of a firearm. *See* Criminal Complaint (docket no. 2), *United States v. Anthony Steven Hall, Jr.*, 15-mj-176-JSS. On June 17, 2015, Assistant Federal Public Defender Christopher Nathan was appointed to represent Defendant. *See* Order Appointing Federal Public Defender (docket no. 8), *Hall*, 15-mj-176-JSS. On June 22, 2015, the United States Probation Office prepared a Pretrial Services Report ("PSR") for Defendant's case. *See* PSR (docket no. 12), *Hall*, 15-mj-176-JSS. In the section titled "Prior Record," the PSR lists Defendant's criminal history, including: a 2003 robbery conviction in Austin, Texas resulting in a prison term and a 2009 conviction for "Ct 1 - Controlled Substance Violation" in Linn County, Iowa resulting in a suspended prison term. *Id.* at 3-4. Regarding the 2009 conviction, the PSR states that, while Defendant was convicted of Count 1, "Counts 2, 3, and 4 were dismissed." *Id.* at 4.

On June 24, 2015, before Defendant was formally charged by indictment or criminal information, Assistant United States Attorney C.J. Williams sent an email informing Mr. Nathan that, if Defendant pled guilty to a one-count information for possessing a firearm as a prohibited person, the government would not pursue an indictment containing a second count for possessing a firearm in furtherance of drug trafficking—a count which the government claimed it could not dismiss in a plea agreement after an indictment. *See* Government Exhibit 2 (docket no. 33-2). Mr. Nathan responded to the email by inquiring whether Mr. Williams was aware of any third predicate felony conviction (beyond the robbery and controlled substance convictions listed in the PSR)

3

under the Armed Career Criminal Act ("ACCA") that would trigger a fifteen-year mandatory minimum sentence if Defendant was convicted of the instant offense. *See* Government Exhibit 3 (docket no. 33-3) at 1. Mr. Williams replied that he was "not aware of a third qualifying offense" and that "it doesn't look . . . like he qualifies" under the ACCA, but that any plea agreement would be written to make Defendant aware that the mandatory minimum would apply if a third offense was discovered later. *See id*.

On June 30, 2015, Defendant waived the right to an indictment (docket no. 4) and the government filed a one-count Information (docket no. 2) charging Defendant with possession of a firearm by an unlawful drug user and felon in violation of 18 U.S.C. §§ 922(g)(1) & (3). Regarding Defendant's status as a felon, the Information alleges only the two convictions included in the PSR. *See* Information.

## C. Guilty Plea

On June 30, 2015, Defendant signed a plea agreement wherein he agreed to plead guilty to Count 1 of the Information. *See* Government Exhibit 1 (docket no. 33-1). Under the "Charges and Penalties" section, Defendant's initials appear next to a paragraph that states as follows:

> Defendant understands that Count 1 of the Information is punishable by the following maximum penalties: (1) not more than 10 years' imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of not more than 3 years. Defendant also understands, however, that <u>if</u> the court finds defendant has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, then pursuant to 18 U.S.C. § 924(e)(1), <u>then</u> Count 1 is punishable by a mandatory minimum sentence of 15 years' imprisonment without the possibility of parole and the following maximum penalties: (1) not more than life imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory

special assessment of $100; and (4) a term of supervised release of not more than 5 years.

*Id.* ¶ 2. Under the "Stipulation of Facts" section, Defendant's initials appear next to a paragraph listing only the two convictions included in the PSR and the Information. *See id.* ¶ 6(G).

The same two convictions appeared again in the government's "Rule 11 Letter" informing Chief Magistrate Judge Jon S. Scoles of the plea agreement entered into by the parties. *See* Defense Exhibit C (docket no. 37) at 18. Additionally, in its description of the "Maximum and Minimum Penalties" in the Rule 11 Letter, the government notified Judge Scoles that the maximum penalties included "not more than 10 years' imprisonment without the possibility of parole" but that, if "the court finds defendant has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another," it would trigger a fifteen-year mandatory minimum sentence with maximum penalties including "not more than life imprisonment without the possibility of parole." *Id.* at 18-19. The government further stated that "it does not appear" that defendant's criminal history qualifies him for the fifteen-year mandatory minimum sentence. *Id.* at 19.

On July 6, 2015, Defendant appeared before Judge Scoles for a plea hearing, during which Defendant entered a plea of guilty to Count 1 of the Information. *See* July 6, 2015 Minute Entry (docket no. 8). At the plea hearing, Judge Scoles personally addressed Defendant in open court as to Defendant's rights, the factual basis for the guilty plea and certain applicable penalties. *See generally* Transcript of July 6, 2015 Hearing (docket no. 20). Regarding the penalties applicable to Defendant, Judge Scoles and Defendant engaged in the following colloquy:

> THE COURT: Mr. Hall, at this time I want to talk to you about the penalties that apply in this case. Upon your plea of guilty to this charge, you can be sent to prison for up to 10 years and fined up to $250,000, with a mandatory special

5

> assessment of $100, and then following your release from prison, be placed on supervised release for up to 3 years. Those penalties are set forth in Paragraph 2 of your plea agreement, which is Exhibit 1.
>
> Do you understand the maximum penalties which could be imposed in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, Paragraph 2 of the plea agreement also refers to certain penalties which may be applicable under the Armed Career Criminal Act. It looks like it's a reference to the residual clause of the Armed Career Criminal Act, which, as I understand it, the United States Supreme Court has found unconstitutionally vague here in the last week or two.
>
> Mr. Williams, does the government claim that the enhanced provisions of the Armed Career Criminal Act would apply in this case?
>
> MR. WILLIAMS: No, as we set forth in the Rule 11 letter, Your Honor, we don't believe the defendant has prior qualifying convictions at this point that we know of that would make him an armed career criminal.
>
> THE COURT: Do you believe that the Armed Career Criminal Act would apply in this case?
>
> MR. NATHAN: No, Your Honor.

*Id.* at 17-18. Judge Scoles then continued to discuss the mechanics of the federal sentencing guidelines and neither revisited the topic of the ACCA nor advised Defendant of the fifteen-year mandatory minimum sentence that it provides. *See id.* at 18.

Following the plea hearing, Judge Scoles filed a Report and Recommendation (docket no. 9) recommending that the court accept Defendant's plea of guilty. Neither of

6

the parties objected to the Report and Recommendation and the court accepted Defendant's guilty plea on July 21, 2015. *See* July 21, 2015 Order (docket no. 13).

### D. Post-Plea Events

On July 21, 2015, the court granted Mr. Nathan's motion to withdraw as attorney and appointed David Nadler to represent Defendant. *See* July 21, 2015 Order (docket no. 14). On August 27, 2015, the United States Probation Office prepared a draft "Presentence Investigation Report" ("PSIR") (docket no. 17). In the draft PSIR, the probation office identified three predicate felony convictions under the ACCA, triggering the fifteen-year mandatory minimum sentence. *See* Draft PSIR ¶¶ 27, 30. The draft PSIR reflected that, in 2009, Defendant received two felony convictions for delivery of a controlled substance under a single case number (FECR 076238), whereas the PSR had reflected only one conviction and dismissal of the other counts charged under that case number. *Compare* PSIR ¶ 30, *with* PSR, *Hall*, 15-mj-176-JSS, at 4. On September 8, 2015, Defendant objected to the draft PSIR's assessment of an enhancement based on the ACCA. *See* Defendant's Objections to PSIR (docket no. 19). On October 6, 2015, the United States Probation Office filed the final PSIR (docket no. 22), noting and responding to Defendant's objections without altering the enhancement. On October 19, 2015, Defendant filed a sentencing memorandum (docket no. 25) renewing his objections to the application of the ACCA.

On November 20, 2015, Defendant filed the Motion. On November 27, 2015, the government filed its Resistance (docket no. 33). On December 4, 2015, Judge Scoles held a hearing on the Motion. *See* December 4, 2015 Minute Entry (docket no. 35). At the hearing, Mr. Nathan testified as to his representation of Defendant. Mr. Nathan stated that he "mistakenly advised" Defendant that he believed Defendant was not an armed career criminal. *See* Transcript of December 4, 2015 hearing (docket no. 41) at 10. Mr. Nathan stated that his mistake resulted from his reliance on the PSR's report that Defendant was

7

convicted of only one controlled substance violation in 2009, with the other counts being dismissed, and his office's misreading of the Iowa Courts Online entry for Defendant's 2009 convictions. *See id.* at 11. Mr. Nathan further testified that the language in Defendant's plea agreement stating that if the court finds three predicate felonies it would trigger the fifteen-year mandatory minimum appears regularly in similar plea agreements, whether or not the ACCA is applicable. *See id.* at 15. Mr. Nathan testified that, based on his advice to Defendant, he believed Defendant was unaware that the ACCA was applicable. *Id.* at 13, 18-19.

On December 15, 2015, Judge Scoles filed a Report and Recommendation recommending that the court grant the Motion. On December 17, 2015, the government filed the Government Objections. On January 6, 2016, Defendant filed the Defense Objections. The matter is fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report

8

when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. ANALYSIS

In the Motion, Defendant seeks to withdraw his guilty plea on three grounds: (1) Judge Scoles violated Federal Rule of Criminal Procedure 11 during his colloquy with Defendant at the plea hearing; (2) the government breached the plea agreement; and (3) Defendant received ineffective assistance of counsel in connection with his plea of guilty. *See* Motion at 1-2. Defendant further argues that additional factors create "a fair and just reason" for permitting him to withdraw the plea. *See* "Brief in Support of Motion" ("Defense Brief") (docket no. 28-1) at 8-9.

In the Report and Recommendation, Judge Scoles recommends that the Motion be granted. Judge Scoles concluded that he violated Rule 11 during the plea hearing by failing to advise Defendant of the potential punishment to be imposed if Defendant were found to be an armed career criminal. *See* Report and Recommendation at 9-10. Judge Scoles further concluded that Defendant provided a fair and just reason for withdrawing the guilty plea. *Id.* at 19. However, Judge Scoles concluded that the government did not breach the plea agreement, *id.* at 11, and that Defendant did not receive ineffective assistance of counsel, *id.* at 12.

In the Government Objections, the government does not dispute that Judge Scoles failed to comply with Rule 11 during the plea hearing, but argues only that the error was harmless. *See* Government Objections at 2-3. The government further objects to Judge Scoles's weighing of the relevant factors when he concluded that Defendant provided a fair and just reason for withdrawing the plea. *Id.* at 3. In the Defense Objections, Defendant does not object to Judge Scoles's conclusion that the Motion should be granted. Defense Objections at 1. However, Defendant objects to Judge Scoles's conclusions that the

government did not breach the plea agreement and that Defendant did not receive ineffective assistance of counsel. *Id*. at 3.

## A. *Harmless Error*

The government argues that the plea agreement and Rule 11 Letter sufficiently informed Defendant of the potential that he would be penalized as an armed career criminal, such that Judge Scoles's failure to comply with Rule 11 was harmless error. *See* Government Objections at 2-3.

Rule 11(b)(1) states, in relevant part, that "[b]efore the court accepts a plea of guilty . . . , the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1). Rule 11(h) further provides that any "variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). The court's failure to inform a defendant of the maximum possible penalties associated with a guilty plea is harmless error when the record clearly demonstrates that the defendant "actually knew" of those possible penalties. *See United States v. Young*, 927 F.2d 1060, 1062 (8th Cir. 1991). When claiming harmless error, the government must point to more than an assumption that a defendant's entry of a guilty plea signals his awareness of the plea's consequences. *See* Fed. R. Crim. P. 11(h) advisory committee's note to 1983 amendments ("There would *not* be harmless error under subdivision (h) where, for example, . . . there had been absolutely no inquiry by the judge into defendant's understanding of the nature of the charge and the harmless error claim of the government rests upon nothing more than the assertion that it may be 'assumed' defendant possessed such understanding merely because he expressed a desire to plead guilty.").

Here, the government claims that Judge Scoles's failure to comply with Rule 11 was harmless because "defendant had actual knowledge from other sources (the plea agreement and the Rule 11 letter) about the possible statutory maximum sentence." Defense Objections at 3. The court disagrees. The record reflects that Defendant was given every indication that the ACCA would not apply to his case. He was told that its applicability depended on him having three or more predicate convictions, and all parties appeared to agree that he only had two such convictions. Although the plea agreement included language reflecting a hypothetical "if/then" scenario wherein the ACCA would apply, Mr. Nathan testified that the language was standard in all plea agreements involving charges of felon in possession of a firearm. It is therefore a weak indicator of Defendant's actual knowledge of the maximum possible penalty as applied specifically to his case—particularly when he was advised by his attorney that the ACCA was not applicable to his case. The Rule 11 Letter is a similarly weak indicator of Defendant's actual knowledge of the maximum possible penalty, for it follows the "if/then" language from the plea agreement with a statement that "it does not appear that defendant would qualify as an Armed Career Criminal." *See* Defense Exhibit C at 19.

The cumulative effect of the language appearing in the plea agreement and Rule 11 Letter was to notify Defendant that the ACCA is applicable to some defendants convicted of the crime to which he was pleading, but that it was not likely applicable to him. Such circumstances are dissimilar to the situation amounting to harmless error in *Young*. In *Young*, the judge presiding over the defendant's plea hearing offered to read the indictment—which included the statutory maximum and minimum sentences on each count—aloud to the defendant, but the defendant "specifically declined because he had the indictment before him." *Young*, 927 F.2d at 1062. In the instant case, Defendant requested that Judge Scoles read the Information aloud, which Judge Scoles did, but the Information made no mention of the statutory maximum and minimum sentences or the

ACCA. *See* Transcript of July 6, 2015 Hearing at 5; *see also* Information. In *Young*, the judge failed to personally advise the defendant of the statutory maximum and minimum penalties that had been described in the plea agreement, but the prosecutor cured the judge's omission in open court by accurately informing the defendant of the statutory maximum and minimum penalties and ensuring that the defendant understood. *Young*, 927 F.2d at 1062. In the instant case, Judge Scoles did not personally advise Defendant about the statutory penalties associated with the ACCA, but rather than curing Judge Scoles's omission, the government and defense counsel represented their understanding that the ACCA was inapplicable, without any statement of the penalties that would attach if they were mistaken. *See* Transcript of July 6, 2015 Hearing at 17-18.

In *Young*, the Eighth Circuit concluded that because the defendant actually knew of the statutory penalties, as clearly established by the record, the judge's Rule 11 violation was harmless error. The significant factual distinctions between *Young* and the instant case do not support such a conclusion here. In analyzing the facts of the instant case, the court is cognizant that "instances in which Rule 11 violations constitute harmless error will be rare." *Young*, 927 F.2d at 1062. As such, the court declines to interpret the contingent standardized language appearing in the plea agreement and the Rule 11 Letter as a reflection of Defendant's actual knowledge of the ACCA and the possible maximum penalties associated with his guilty plea. Accordingly, the court finds the Rule 11 violation is not harmless error and supports Defendant's requested withdrawal of his guilty plea.

### B. *Fair and Just Reason for Withdrawal*

The government argues that the balance of relevant factors shows that Defendant has failed to provide a fair and just reason for requesting to withdraw his guilty plea. *See* Government Objections at 3. Specifically, the government contends that "Defendant's belated claim of innocence and the unexplained delay in moving to withdraw his guilty plea" weigh against the court granting his request to withdraw. *See id*.

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The 'fair and just' standard is a liberal one, but it does not create an automatic right to withdraw a plea." *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005) (quoting *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996)). "Even if a fair and just reason exists, before granting the motion [to withdraw a guilty plea] a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *United States v. Heid*, 651 F.3d 850, 853-54 (8th Cir. 2011) (quoting *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006)). Defendant bears the burden of proving that "the recognized justifications should permit a withdrawal" of his guilty plea. *Smith*, 422 F.3d at 723.

As an initial matter, the court concludes that the Rule 11 violation noted above creates a fair and just reason for Defendant's request to withdraw his guilty plea. *Cf. Heid*, 651 F.3d at 856 (finding a violation of Rule 11(b)(3) to satisfy the "fair and just reason" requirement). Therefore, the court turns to a consideration of the three additional factors relevant to the withdrawal of a guilty plea.

### 1. *Assertion of innocence*

Defendant presently asserts his innocence to the charge against him. *See* Motion at 8. The government protests that Defendant's claim of innocence is "diametrically opposed to [D]efendant's admissions in pleading guilty." Resistance at 17. However, as Judge Scoles accurately observed, "any time a defendant asserts his innocence and asks to withdraw his guilty plea, there is an inconsistency with the record made at the plea change hearing." Report and Recommendation at 17. Recognizing this logic, the inconsistency between Defendant's position at the plea hearing and at present is not

determinative of the issue.[2] Rather, the court finds that the existing record, viewed as a whole, raises a genuine dispute as to Defendant's guilt or innocence. Therefore, the court finds that the assertion of innocence factor weighs in favor of permitting Defendant to withdraw his guilty plea.

### 2. *Delay in filing the Motion*

The court accepted Defendant's guilty plea on July 21, 2015, and Defendant filed the Motion on November 20, 2015. However, the severity of this four-month delay is mitigated by two observations. First, Mr. Nathan withdrew from the case on the same date that the court accepted Defendant's guilty plea. Therefore, Defendant's present counsel did not become familiar with the case until after the guilty plea had already been entered. Second, and most importantly, the central issue giving rise to the Motion—the lack of notice during the plea hearing as to the maximum possible penalties—only came

---

[2] The government cites a number of cases to support its argument that the inconsistency between Defendant's guilty plea and his assertion of innocence forecloses his ability to withdraw his guilty plea. *See* Resistance at 17-18. However, the cases are not directly on point. In these cases, the Eighth Circuit held that unsupported assertions of innocence are not independently sufficient grounds for withdrawing a guilty plea, after other attacks on the guilty plea have failed. *See, e.g.*, *United States v. Goodson*, 569 F.3d 379, 382-83 (8th Cir. 2009) (holding that assertion of innocence is an insufficient ground to withdraw a guilty plea after rejecting a claim that the plea was involuntary); *United States v. Peebles*, 80 F.3d 278, 279 (8th Cir. 1996) (holding that assertion of innocence is an insufficient ground to withdraw a guilty plea after rejecting a claim that defense counsel made promises as to the ultimate sentence); *United States v. Ludwig*, 972 F.2d 948, 950-51 (8th Cir. 1992) (holding that assertion of innocence is an insufficient ground to withdraw a guilty plea after rejecting a claim that the government made promises as to the ultimate sentence); *United States v. Morrison*, 967 F.2d 264, 267-68 (8th Cir. 1992) (holding that assertion of innocence is an insufficient ground to withdraw a guilty plea after rejecting a cursory claim of newly discovered evidence). Unlike these cases, the issue before the court is not whether Defendant's assertion of innocence alone amounts to a fair and just reason for withdrawing his plea, but instead whether his assertion of innocence in addition to the Rule 11 violation at Defendant's plea hearing, and other factors, combine to state a fair and just reason for withdrawing the plea.

into focus with the filing of the draft PSIR on August 27, 2015, at which point the parties learned for the first time that Defendant had a third predicate felony qualifying him as an armed career criminal.

The government states that the delay in this case "is reason enough" to deny the Motion, and cites to a series of cases wherein motions involving four-, five- and seven-month delays were denied. Resistance at 19. However, contrary to the government's interpretation of those cases, the filing delays merely provided additional reasons for denying the motions, in concert with consideration of other factors. *See United States v. Jones*, 479 F.3d 975, 978 (8th Cir. 2007) (finding a seven-month delay to be "[f]urther" support for denying the motion, "[i]n addition to the fact" that the defendant made insufficient showings elsewhere); *United States v. Prior*, 107 F.3d 654, 658 (8th Cir. 1997) (finding "[a]dditionally" that a five-month delay supported denying the motion, where the defendant made insufficient showings elsewhere); *United States v. Vallery*, 108 F.3d 155, 158 (8th Cir. 1997) (finding a four-month delay to support denying the motion, "[i]n addition" to the defendant's insufficient showings elsewhere). Because Defendant has made a sufficient showing as to the Rule 11 violation during his plea hearing, his delay in filing the Motion is not dispositive. Further, Defendant was not inactive during the delay. During the three-month period, Defendant objected to the ACCA enhancement[3] in the draft PSIR, briefed his objections in a subsequent sentencing memorandum and gained access to the transcript of the plea hearing. Therefore, while the court recognizes the relatively substantial delay in filing the Motion, in light of a full view of the context of the delay, the court finds that the delay factor does not weigh against permitting Defendant to withdraw his plea.

---

[3] Unlike the ACCA-related confusion prior to the guilty plea, Defendant's objections to the PSIR did not extend from the 2009 Iowa convictions. Instead, Defendant objected to the ACCA enhancement on grounds that his Texas robbery conviction was not a "violent felony" for purposes of the ACCA. *See* Defendant's Objections to PSIR at 1.

### 3. *Prejudice to the government*

Defendant recognizes that the delay in filing the Motion will result in "some degree of prejudice" to the government, but argues that the relative lack of complexity of the case makes such prejudice minimal. Defense Brief at 9. Defendant assumes that the case will involve "the testimony [of] a few witnesses and the preparation of a few exhibits." *Id*. The government states that, regardless of the complexity of the case, "[p]rejudice occurs by reason of the passage of time, the inevitable degradation of memory, and the possible loss of evidence" and that the government subpoenaed fewer witnesses during the grand jury proceedings because it anticipated Defendant's plea of guilty to an information. Resistance at 20. While the prejudice to the government is certainly not trivial, the court finds such prejudice to be relatively minimal given the nature and complexity of the case. Therefore, the court finds that the prejudice factor does not weigh against permitting Defendant to withdraw his plea.

Accordingly, after considering Defendant's stated reason for withdrawing his guilty plea, and the associated relevant factors, the court concludes that Defendant has provided a fair and just reason for withdrawing his guilty plea, as required by Rule 11(d)(2).

### V. CONCLUSION

In light of the foregoing, the Government Objections (docket no. 39) are **OVERRULED**[4] the Report and Recommendation (docket no. 38) is **ADOPTED**; and Defendant's Motion to Withdraw Guilty Plea (docket no. 28) is **GRANTED**.

**IT IS SO ORDERED**.

---

[4] Because Defendant "agrees with . . . the conclusion of" the Report and Recommendation, Defense Objections at 1, and the court adopts the Report and Recommendation, the court needs not address Defendant's objections as to any alleged breach of the plea agreement and any alleged ineffective assistance of counsel.

**DATED** this 24th day of March, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA